## 27988. SLOCUM v. THE STATE.

UNDERCOFLER, Justice. Harry Slocum and Paulette Bryden were jointly indicted for murder and armed robbery committed as a part of the same continuing transaction. Harry Slocum was tried and convicted on each indictment and received separate life sentences. He appeals to this court. *Held*:

1. The appellant contends that the trial court erred in denying his motion for separate trials on the murder and the armed robbery indictments. In *Henderson v. State,* 227 Ga. 68, 76 (179 SE2d 76) this court construed Code Ann. § 26-506 (b) (c) of the 1968 Criminal Code (Ga. L. 1968, p. 1249 et seq.). In that case it was said: "Formerly the judge had a discretion to order separate trials, but his discretion was abused if the separate counts involved different species of felonies or crimes of a different nature requiring different kinds of evidence to prove guilt. This test no longer need be applied. The only test under the new Criminal Code is whether the interests of justice will be served by ordering separate trials. The judge may order the charges tried separately but he is not required to do so if in his opinion the interests of justice will not be served thereby. We think the trial court in this case was justified under the facts of the case in concluding that the interests of justice would not be served by ordering separate trials." This case was followed in *Pass v. State,* 227 Ga. 730 (3) (182 SE2d 779).

It follows that there is no merit in this contention of

the appellant.

2. The co-indictee testified that she met the appellant in 1971 and had dated him for a couple of months in New York before he returned to Georgia; that in July, 1972, she met the appellant in Pennsylvania and they returned to Warner Robins, Georgia, and lived together in his brother's house; that on the night of the murder and robbery, they were in a bar when a man (later identified as the victim) ran his car into a ditch and someone asked the appellant to help him get the car out of the ditch; that the appellant left the bar and talked with the victim for 5 or 10 minutes after the car was removed from the ditch; that the appellant called the co-indictee outside and said that they would take the victim home; that the appellant drove his own car; that the victim had been drinking and the co-indictee asked him if he wanted her to drive for him; that he told her that he did and that he lived in Hawkinsville; that she was driving the victim's car and following the appellant; that after driving a short distance, the appellant stopped his car; that she thought he had a flat tire and stopped behind him; that the appellant told her to drive the victim's car up to a gate; that the appellant was already out of his car; that she and the victim got out of the car in which they were riding and all of them started walking up the road; that she stopped to urinate; that the appellant and the victim continued up the road; that when she caught up with them, the victim was on the ground and the appellant was standing over him asking for his money; that the victim told him he did not have any money; that the appellant told him that he was going to kill him and began hitting him with a four-way tire tool; that she went up to him, grabbed him, screamed and told him to stop; that she then backed up; that the appellant hit the victim again; that she saw blood; that she saw the appellant strike him several times; that she ran back

to the appellant's car and got in; that the appellant came back, jumped in the car with her and drove away; that they stopped the car by some water and the appellant threw the victim's car keys, watch, and the tire tool into the water; that she later showed the police officers where they were thrown; that when they returned to the house where they were living, the appellant realized that his wallet was missing and returned to the scene of the crime to look for it; that the appellant told her that he could not find his wallet at the scene but that the victim was still alive; that he looked through the victim's wallet at the house and then burned it in a pan by putting gasoline on it; that she later took the burned contents of the pan outside and emptied it under the house; that the appellant had on shoes with a horseshoe cleat on the heel; that he removed the cleat from one of his shoes after the murder and robbery; that there was blood on his pants and she washed them; and that they were arrested two days later.

The appellant contends that the evidence of Paulette Bryden, his co-indictee, was the only evidence against him, and that he could not be convicted on her testimony alone.

"The rule is well established that, to sustain a conviction in a felony case upon the testimony of an accomplice, there must be corroborating facts or circumstances, which, in themselves and independently of the testimony of the accomplice, directly connect the defendant with the crime, or lead to the inference that he is guilty, and more than sufficient to merely cast on the defendant a grave suspicion of guilt." *Price v. State,* 208 Ga. 695 (3a) (69 SE2d 253); *Allen v. State,* 215 Ga. 455 (2) (111 SE2d 70); *Pritchard v. State,* 224 Ga. 776, 778 (164 SE2d 808).

In addition to the testimony of the co-indictee, the evidence shows that after the victim's car was removed

from the ditch, the appellant left the bar about midnight and at the same time his co-indictee and the victim left in the victim's car which the co-indictee was driving; immediately prior to that time, his co-indictee and the victim had been "hugging up"; that the victim was beaten to death with a four-way tire tool which was recovered from a pond with blood still on it; that the victim was found the next morning barely alive in a church yard; that he died shortly thereafter; that a heel mark was found at the murder scene with a horseshoe design on it; that when the appellant was questioned, he was wearing a pair of shoes with human blood on them and a horseshoe design on the heel; that at the appellant's house a pan was found in the yard in which items had been burned; that a piece of a "plastic-type" thing was in the pan; that right under the edge of the front porch partially covered with sand there were pieces of paper that had been burned, part of the victim's burned driver's license, and part of his charred billfold.

This evidence was sufficient to corroborate the testimony of the co-indictee.

There is no merit in this contention of the appellant.

3. The appellant contends that the trial court erred in charging the jury: "Whether or not in a criminal case under the evidence a witness is an accomplice is a question of fact to be determined by the jury." The trial court further charged the jury: "A conviction in these cases would not be authorized on the uncorroborated testimony of an accomplice . . ." etc.

The appellant contends that since Paulette Bryden was a co-indictee, that she was an accomplice as defined in *Kearce v. State,* 178 Ga. 220 (172 SE 643) and that the trial court should have so instructed the jury.

The charge was not harmful to appellant. If in fact the co-indictee was an accomplice, her testimony was amply supported by other evidence and, therefore,

sufficient to sustain the conviction. The enumeration of error is without merit.

4. Under the facts in this case the trial court did not err in overruling the appellant's motion for a directed verdict of acquittal on the robbery charge under Code Ann. § 27-1802 (Ga. L. 1971, pp. 460, 461).

5. The appellant contends that the trial court erred in instructing the co-indictee, who was to testify as a witness, of her right against self-incrimination. "It is within the discretion of the trial judge to warn or not to warn a witness of the privilege." Green, Georgia Law of Evidence, 392, § 156; *Lauchheimer & Sons v. Jacobs,* 126 Ga. 261 (4) (55 SE 55). There is no merit in this contention.

*Judgment affirmed. All the Justices concur.*

SUBMITTED JUNE 1, 1973 — DECIDED JULY 2, 1973.

*Aultman, Hulbert, Cowart & Daniel, Robert L. Hartley, Jr.,* for appellant.

*R. Joneal Lee, District Attorney, Arthur K. Bolton, Attorney General, Courtney Wilder Stanton, Daniel I. MacIntyre, Assistant Attorneys General,* for appellee.