## S01A0567. VILLEGAS v. THE STATE.
(546 SE2d 504)

CARLEY, Justice.

At the Red Barn Pool Hall, a fight broke out between Douglas Villegas and several members of a gang. He fired a gun, wounding three and killing another. Villegas is an El Salvadorian national, but the arresting officers did not inform him that, under the Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261, 1967 WL 18349 (ratified November 24, 1969) (Vienna Convention), he had the right to contact that country's consulate. In his statement to the police, Villegas claimed that he had been mistakenly identified to the victims as a member of a rival gang, and that he went to the pool hall to inform them of the error. According to him, he fired his weapon only after one of the gang members pointed a gun at him and threatened to shoot. However, all of the other witnesses, including Villegas' own companions, testified that he alone was armed. The jury found him guilty on alternative counts of malice and felony murder, three counts of aggravated assault, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. After correctly imposing a life sentence only for the malice murder, the trial court sentenced him to consecutive terms of years on the remaining counts. See *Malcolm v. State*, 263 Ga. 369, 372 (5) (434 SE2d 479) (1993). Villegas thereafter filed a motion for new trial, which the trial court denied, and he now appeals from the judgments of conviction and sentences entered on

the jury's guilty verdicts.[1]

1. The evidence is sufficient to authorize a rational trier of fact to find proof of Villegas' guilt of the murder and the various other offenses beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Duncan v. State*, 271 Ga. 16 (1) (515 SE2d 388) (1999).

2. Appellant contends that the trial court erred in failing to sever for separate trial the charge of possession of a firearm by a convicted felon. The original indictment did not specifically allege that offense as the predicate felony in the alternative felony murder count, but the subsequent re-indictment did contain that allegation. Thus, that crime clearly was material to the more serious charge of felony murder. *Ford v. State*, 262 Ga. 602, 603 (1), fn. 4 (423 SE2d 255) (1992). Therefore, bifurcation was not authorized. *Haynes v. State*, 269 Ga. 181, 183 (3) (496 SE2d 721) (1998).

Villegas urges that a contrary holding is required because only the re-indictment alleged possession of a firearm by a convicted felon as the underlying felony in the felony murder count. However, he had no right to be tried on the original indictment, and the State was authorized to re-indict him. *Casillas v. State*, 267 Ga. 541 (1) (480 SE2d 571) (1997). Moreover, the firearm offense was included in the malice murder charge as a matter of fact, so that bifurcation would not have been authorized even if he had been tried on the original indictment. *Jones v. State*, 265 Ga. 138 (2) (454 SE2d 482) (1995); *Williams v. State*, 263 Ga. 135, 136 (1) (429 SE2d 512) (1993); *Jolley v. State*, 254 Ga. 624, 627 (2) (331 SE2d 516) (1985).

3. During the course of the investigation, a confidential informant provided the police with information about Villegas, including the fact that he was no longer a member of an Atlanta gang. The defense moved unsuccessfully to compel the State to reveal the identity of this individual, contending that it wished to call him to testify to appellant's status as a former gang member.

Because the confidential informant appears to be a mere tipster who had neither seen nor participated in the events, disclosure was not required. *Branch v. State*, 248 Ga. 300, 301 (2) (282 SE2d 894) (1981). Moreover, neither Villegas' former nor present gang membership was a relevant inquiry, since it was not an element of any crime he was charged with committing and the only material issue in dis-

---

[1] The crimes occurred on June 1, 1998. The grand jury returned the indictment of Villegas on September 1, 1998 and the reindictment on January 12, 1999. The jury found him guilty on March 23, 1999 and, the next day, the trial court entered the judgments of conviction and sentences. Villegas filed a motion for new trial on April 21, 1999, and the trial court denied that motion on September 13, 2000. He filed a notice of appeal on October 11, 2000, and the case was docketed in this court on January 4, 2001. The appeal was orally argued on March 19, 2001.

pute was whether he acted in self-defense. See *Ivory v. State*, 234 Ga. App. 858, 859 (2) (508 SE2d 421) (1998). Furthermore, even assuming that the severing of his former affiliation with an Atlanta gang could be characterized as exculpatory and relevant, he did not show that the confidential informant was the only available witness who could testify to that fact. See *Ivory v. State*, supra at 860 (2). Under these circumstances, the trial court properly denied the motion to reveal the identity of the police informer.

4. Appellant filed a pre-trial motion to suppress his in-custody statement, contending that it was the product of an unlawful arrest. The trial court denied the motion, and he enumerates that ruling as error.

Villegas' comments to the officers were exculpatory, since he claimed that the shootings were justified as acts of self-defense. As the statement was not inculpatory, the denial of the motion to suppress, even if error, was not harmful. See *Strickland v. State*, 260 Ga. 28, 29 (2) (c) (389 SE2d 230) (1990). Furthermore, the prosecution did not introduce the statement into evidence. The defense proffered it in an apparent effort to corroborate and bolster Villegas' trial testimony that he fired the gun to protect himself. Thus, any error in the admission of the evidence was induced by appellant himself. See *Stevens v. State*, 245 Ga. 583, 586 (4) (266 SE2d 194) (1980); *Parrott v. State*, 159 Ga. App. 749 (285 SE2d 87) (1981).

5. Villegas also urges that the trial court should have suppressed evidence discovered in a search of his car and home. However, he cites nothing produced by those searches which was harmful to his defense. Because there was no dispute that he fired the gun, the decisive question was whether he was justified in doing so. Because the officers found no evidence on that controlling issue in either the automobile or the house, the denial of appellant's motion to suppress, if error, was harmless at most. *Muff v. State*, 254 Ga. 45, 48 (2) (b) (326 SE2d 454) (1985); *Gribble v. State*, 248 Ga. 567, 569 (2) (284 SE2d 277) (1981); *Welch v. State*, 237 Ga. 665, 673 (9) (229 SE2d 390) (1976).

6. Villegas urges that the arresting officers' failure to advise him of his right to contact the El Salvadorian consulate was a violation of the Vienna Convention requiring dismissal of the indictment and suppression of his statement. As a general rule, however, international treaties do not create individual rights which are privately enforceable in court proceedings. See *United States v. Li*, 206 F3d 56, 60 (II) (1st Cir. 2000). Even assuming, without deciding, that the Vienna Convention is an exception to that general rule,

it is clear that nothing in the text requires suppression of evidence or dismissal of the indictment for violations. . . .

[Cit.] Because by its terms the Vienna Convention does not require application of the exclusionary rule or the more drastic remedy of dismissal of the indictment, we cannot impose such judicially created remedies absent a violation of a constitutional right. . . . We find that the rights, if any, created by the Vienna Convention do not rise to the level of a constitutional right protected by the judicially created remedies sought by [Villegas].

*United States v. Page*, 232 F3d 536, 540-541 (1) (6th Cir. 2000).

The record also indicates that Villegas declined to contact the consulate even after he was advised of his right under the treaty to do so. Thus, he did not show that any alleged violation of the Vienna Convention had a prejudicial effect on his trial. *Breard v. Greene*, 523 U. S. 371, 377 (118 SC 1352, 140 LE2d 529) (1998). Moreover, as previously noted in Division 4, the defense introduced appellant's statement into evidence and, for that additional reason, he cannot complain that he was harmed as the result.

7. Geronimo Ayala, who was one of the aggravated assault victims and also the brother of the homicide victim, was unavailable for trial. Relying on the "necessity" hearsay exception, the defense sought to elicit testimony from Jeff Smith about statements allegedly made to him by Ayala. According to Smith, Ayala admitted that he pointed a gun at Villegas and that Villegas was, therefore, acting in self-defense when he fired his weapon. Concluding that the statements Smith attributed to Ayala lacked a particularized guarantee of trustworthiness, the trial court excluded the hearsay testimony. Villegas enumerates that evidentiary ruling as error.

The alleged admissions were made some months after the events, at a time when Smith and Ayala were both inmates. Smith had prior convictions for forgery and providing false information. The statements he attributed to Ayala were not corroborated by any other witness and were not made in the course of an official investigation. Under these circumstances, the trial court was authorized to exclude the hearsay testimony based upon its lack of trustworthiness. See *Cook v. State*, 270 Ga. 820, 828 (5) (514 SE2d 657) (1999). Compare *McKissick v. State*, 263 Ga. 188, 189 (3) (429 SE2d 655) (1993); *Higgs v. State*, 256 Ga. 606, 608 (5) (351 SE2d 448) (1987); *Sorrow v. State*, 234 Ga. App. 357, 358 (1) (b) (505 SE2d 842) (1998).

8. After the trial, Ayala returned to Georgia and, by way of affidavit, denied that he pointed a gun at appellant and that he ever stated to Smith that he had. Villegas cited this affidavit as newly discovered evidence requiring the grant of the motion for new trial, but the trial court found no merit in this ground.

The facts surrounding the events, as related by Ayala in his affi-

davit, were not exculpatory and were cumulative of the testimony of numerous other witnesses that only Villegas was armed. Since the evidence is cumulative and would not support a different verdict, it does not authorize the grant of a new trial. *Tanner v. State*, 247 Ga. 438, 443 (1) (276 SE2d 627) (1981).

*Judgments affirmed. All the Justices concur.*

DECIDED MAY 7, 2001.

*H. Bradford Morris, Jr.*, for appellant.

*Lydia J. Sartain, District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Daniel G. Ashburn, Assistant Attorney General*, for appellee.

